In our next case, Brunenkant v. Suburban Hospitals. Mr. Brunenkant? Yes, Your Honor. I mispronounced your name. I'm sorry if I did. No, you have it correct. This is an appeal of a November 11, 2023 decision, a memorandum opinion by the U.S. District Court for the District of Maryland. And it's on appeal here because the opinion itself analyzed the wrong claim, a claim that wasn't alleged in the complaint. The cause of action in this case, as alleged in the complaint, is fraudulent concealment. Fraudulent concealment really has two aspects in this particular case. The first aspect of fraudulent concealment began when the appellant, myself, came to the hospital, was diagnosed as having... I say the statute of limitations that applies here would be the general statute of limitations. And the reason for that is... So this is just so, clarity, that's 5101? Yes. Okay, just want to make sure. That is correct. And the hospital says it's the other statute, 5109? That is correct. Why don't we just let the Maryland Supreme Court tell us which statute applies? Well, I mean, that is certainly an option. State law issue, right? What? It's a state law issue, for sure. It is a state law issue. This is a federal court. That is correct. And we're supposed to get the state law correct. So if 5101 applies, you were probably timely. If 5109 applies, you may or may not be timely. It seems like to me we're just guessing at what the Maryland law would be. Well, I certainly see your point, and I certainly... That's been called an eerie guess at the federal court, the eerie. Well, but we make eerie guesses all the time, right?  And hasn't the Maryland Supreme Court said this statute is limited to medical malpractice actions? I apologize. Hasn't the Supreme Court of Maryland said that 5109 is limited to medical malpractice actions? That is correct. And your view is this is not a medical malpractice action? That is correct. My position on this case is indeed when it was originally filed, pursuant to the Health Care Malpractice Claims Act in Maryland, it was required to be filed with the Health Care Dispute Resolution Office in Maryland, and indeed it was... I'm just looking at their language in Hill v. Fitzgerald. They say medical malpractice claims. It was spurred by a malpractice crisis. It's to limit the long tail of the discovery rule in medical malpractice actions.  And in this case, the original case, what I call the first case, not this case, the first case was indeed the medical malpractice, what happened in terms of the surgeries. As a result of filing the first case, the case that involved the medical malpractice, the medical injuries, the multiple surgeries, that case was filed before the Health Care Dispute Resolution Office. In pursuing that particular case in discovery, what we discovered was that there was a contract, and in that contract there were material terms that should have been disclosed to me at the time that I came to the hospital before the surgery. The claim is before the surgery, having nothing to... Well, it has something it's related to, but this claim has nothing to do specifically with the date of the surgeries, which is what the district court was focused on in calculating the statute of limitations. They looked at what was the date of the surgeries, the last surgery... The hospital's going to say that this is a derivation of the original medical malpractice. Well, part and parcel. If indeed this issue had been known at the very beginning, then it is possible that all of these claims would have been filed together, but there wouldn't have been... If you look at the statute itself, the statute has a definition, a condition precedence that have to be pursued before having a medical malpractice claim. You have to have an expert, and that expert has to have... This is the provision in section 32A02C2i1a. It has to do with the background of the expert. Shall have had clinical experience, provided consultation relating to clinical experience, or taught medicine in the defendant's specialty or related field of health care or in the field of health care in which the defendant provided care or treatment to the plaintiff within five years of the date of the alleged act of remission. I assume your argument is you don't need a medical malpractice expert for these claims. That would be correct. I think just looking at the nature of what you're supposed to present to this office will indicate that this isn't that type. This has to do with the administration. This has to do with... When I walked into the hospital and the hospital assigned a doctor who they represented to be their on-call surgeon, they represented that they had responsibility for this surgeon. But being an on-call surgeon doesn't necessarily mean that the doctor is an employee of the hospital, does it? No, it doesn't. The doctor could be an independent contractor. That could be correct, Your Honor. But what they represented to me was that he was their on-call doctor.  Being an on-call surgeon is not necessarily an employee, though. That is correct. That is correct. But what I'm saying is that in coming into the hospital before surgery... But I thought you were alleging he was an employee. No. The question has to do with what are the material facts that were not disclosed to me that would have had a bearing on whether or not to accept the hospital's assignment to this surgeon. They didn't disclose to you, you said, that he was 72 years old and some insurance companies said he was a high-risk doctor. Well, yes, that's all. Does that sum up a little bit of what you were alleging was not disclosed? No, it goes much further than that. It really goes... Those would be part of the factual context in terms of the consequences, the consequences of contractual provisions. The purpose of the contract itself is only because they contain material facts. These material facts could have been disclosed in any number of ways. Why don't you tell us what you allege in your complaint are the material facts the hospital did not tell you? Okay. They didn't tell me that it wasn't their on-call surgeon. They did not tell me that they were not taking responsibility for the surgeon and they did not tell me that they would not supervise the surgeon. And these issues, you know, when applied to the specific facts subsequently, show that there are malpractice allocation risks that weren't disclosed. I mean, you know, just as an example, within these broader categories that are not disclosed, the hospital didn't require the surgeon to have tail insurance. So what that meant is, as an example... I just want to confirm, these facts are in the complaint? They're in the record. I'm sorry, what do you mean they're in the record? Because this case had, this particular case, had the first case in front of it. The first case in front of it, after the disclosure... You mean the different case? A different case. So you're telling me facts that are not in this complaint that are in the record in a different case? Well, the way this procedurally began, it began with the medical malpractice complaint filing, filed in the beginning of 2020. That's 20-CV-150. That's where the case originated from the filing... I have a yellow light. Has your original medical malpractice claim for injury for defective surgery, has that case gone to trial? Has it been settled? No, that has not. So it's still pending? Yes, and indeed, we tried to amend that complaint back in 2022 to include these particular claims. And the defendant said, no, these claims, the claims that are now in this other case, these claims for fraudulent concealment have nothing to do with a medical injury. They don't have to do with your malpractice case. They're different issues requiring different discovery, different facts, different proof. So the court said, on the basis of this, because these are different legal theories and we're ready to go, we don't want to delay the trial in this malpractice case, we're denying your right to amend that complaint. So is that the basis of your judicial estoppel argument? That's correct, Your Honor. Because there was an argument made in the earlier case that this was a different issue. So what happened is that when they denied it here, I filed for reconsideration. After filing for reconsideration, the court was delaying, and then I started to become concerned about a statute of limitation issue, and I settled all this forth in the complaint. So I filed this new complaint, the case that's now before you, and then in the motion to dismiss, the defendants are claiming now that, well, no, it's a medical injury case. And that first case that I sought to amend, where it was thought, well, we don't want to delay it, well, that was four years ago, and we still haven't had the trial in that case. But this still gets back to whether or not, I can understand the court's position in terms of saying, listen, there are issues to look at here. Why not certify it? Just to be clear, we don't have a position. All we're doing is asking questions. I apologize, yes. So you are opposed to a certification. I didn't think a certification was necessary. I thought that you'd be able to find, under either of the potentially applicable statute of limitations, it's told with respect to the claims of fraudulent concealment. And I think that the record shows why it is told. Does the Maryland certification statute require us to say something is outcome determinative? Some states do. I don't think so.  I'm just saying, like, irrespective of what the answer to this question is, it's not clear that either answer ends the case. It's not clear this is a question whose answer would definitively end the case. I would agree with that. It depends. If the answer is that 5101 is the applicable statute, well, it doesn't end the case. It definitely will continue the case. And we have a whole series of questions about what happens under 5101. That would be correct. Then there's an additional question that the Maryland court would have to decide to the extent that the defendants raise it, and that would be, does the first filing, I'm sorry, my time's up. Go ahead and finish. The question would be, if the court decides that it was 5-109 that's applicable and it's remanded back, at that point in time, if the defendants say, well, you need to make a subsequent, a supplemental filing before the Maryland Healthcare Dispute Resolution Office, then we have a question in terms of, what am I filing here? I've already filed the original in 2018 on the medical claim. I'm required to file a supplemental, or is the statute of limitations preventing me now from making the supplemental filing before the Healthcare Dispute Resolution Office? So I would certainly agree that it does certainly make a difference on the future proceedings whether or not it is 5-101 or 5-109. And you say it's 5-101? I say it's 5-101. We understand your position. Thank you. Thank you very much. Thank you. Mr. Bondeski. Thank you, sir. May it please the court, Mike Bondeski. Good to see you, sir. Thank you, sir. Mike Bondeski on behalf of the appellate. If 5-101, if we determine 5-101 applies. If you do. If we did, does that require reversal of the district court's decision? Of course not. All right. Why not? For the same reason that if you apply 5-109, it doesn't. And you're going to explain that to us. Absolutely. Absolutely. A cause of action accrues in Maryland when you have tortious conduct that causes an injury. Simple, straightforward. That's true in the 5-101. That's true in the 5-109. The only real difference with 5-109 is it places a hard stop on the discovery rule. The discovery rule says that the cause of action accrues. And that's the basis on which the district court dismissed this case, the hard stop principle? No. No? No. I thought the court said it's been more than five years, so he loses. It has. But the court said two things that are really important. One is that the alleged fraud did not preclude or prevent or keep Mr. Prunikant from learning of his claim. So the fraud provision of 5-203 doesn't apply at all. And the court also said if you're going to rely on 5-203, you must articulate with clarity specific facts in the complaint that details what the fraud was, how the fraud kept you from learning of your claim. Sorry, is this your alternative basis for affirmance, or is this what you claim the district court said? This is what the district court said. Okay. Fraud claims have to be with particularity. Yeah, if you're going to allege fraud, if you're going to allege that the statute of limitations That's in Rule 8 or Rule 9 of the Federal Rules. That's in the rules for a complaint. Sure, if you're going to allege fraud, you've got to articulate with particularity the facts that you're going to rely upon that says here's why I couldn't discover the claim sooner. Well, he says he did. He says he did what? He doesn't say that the fraud prevented him from learning his claim. The complaint specifically alleges that on November 20, 2015, he learned of all of the negligence. Everything was unveiled when he underwent his subsequent surgery at Georgetown. Once you have knowledge of a claim under Maryland law, and the case was decided in the brief that I've submitted, you are under a legal duty to investigate all potential claims against all potential defendants. So as of November 20, it's on the… How is he on notice when he has a personal injury that there's a misrepresentation as to the liability of the hospital and the physician? So you are obligated under Maryland law, specifically articulated by the Duval case, a dual case that I set forth in the brief, you are obligated to conduct an investigation. You as the plaintiff are obligated, and you have three years to do it, to investigate all potential claims, including a claim of fraudulent misrepresentation against all potential partners. Wait a minute. I thought he said that the hospital did not disclose to him, despite being requested, that the hospital was not the employer, that the hospital was not supervising this particular on-call physician. And it was only later in discovery that that was revealed. He does allege in the complaint, Mr. Brunenkamp does, I'm sorry, does allege in the complaint that those facts were not disclosed to him on October 10th or 11th prior to undergoing surgery with Dr. D. He also alleges, I think, that they lied to him about it, falsely answered that. I don't know that he specifically says that in the complaint. But that sounds like it's some particularity. Okay. I assume that's true. And for purposes of the motion to dismiss, you have to. But that doesn't change the fact that he was aware of his claim, a cause of action, as of November 20th. He's aware of a claim for one thing. That doesn't mean he's aware of a claim for something else. But it triggers the responsibility. I just think that's got to be wrong, because let me think about why that would be. Like, imagine that it turns out his med malclaim is ultimately unsuccessful. As in, the med malclaim is basically the doctor who operated on me screwed up in a way that creates liability. That's basically what a med malclaim is, right? And you could lose the med malclaim, because, you know, like, medicine is hard. And sometimes doctors have to make tough judgment calls. And there's no medical malpractice. But then the claim is, oh, I never gave informed consent to have that doctor. I understand he wasn't, like, negligent in a med mal kind of way. And I guess I understood that, which is why I went to who I thought was the greatest surgeon in the world, who represented as the greatest surgeon in the world. I didn't want the doctor who's just barely over the malpractice line. I wanted the Mayo Clinic doctor. And you lied to me about this being the Mayo Clinic doctor. So the mere fact the surgery goes badly in that situation doesn't tell me that I'm unnoticed, that you lied to me about who the doctor was. I just don't understand. When I read the district court's opinion, which I have pulled up here, and what you're saying is I think it's just a conceptual leap to say, yes, maybe he knew that someone screwed up the surgery. I don't know how that relates. Maybe that means they lied to me about the identity or the characteristics of the person who performed the surgery. Those are just different claims. Okay. Right. What's your response to that? As set forth in detail in the reply brief and the supplemental brief, as of November 20th, he was on notice of a claim. A claim, yes. I'm on notice of lots of claims all the time. That doesn't mean I'm on notice of every other claim in the world. And that triggers your duty as the plaintiff to investigate all claims against all potential parties. You have a duty to go look to see if there's other claims and if they are against who and what those claims are. That's set forth in the school case. Why would any rational person think that there's some fraudulent action in the delivery of the medical care as opposed to negligence? I'm not so sure that they would. But that doesn't change the fact you're under a duty to investigate your claims. So the primary claim that Mr. Brunenkant is making is that he was unaware that Dr. D was not an employee or agent of Suburban Hospital. That's essentially what he alleges in his complaint. Well, his primary complaint was this guy did a bad job on me. I sued him, and I sued the person who I thought was his employer based on all kinds of representations that were made to me. And then after I sued him and his putative employer, his putative employer says, you can't sue us because it turns out we weren't his employer. And he says, whoa, whoa, whoa. No one ever told me you weren't his employer. And I sued you for that theory as soon as I found out that you were arguing you weren't really his employer. That I understand is what he argues. Yeah, I understand that you're – And that's what the complaint alleges. So he sued Dr. D. Right. And he sued Suburban Hospital. Because he thought you were his employer. Sure. In the first case. Absolutely. You're correct. And the claim – And where and how did he first get the notion that you weren't Dr. D's employer? Because you said it in response to his first lawsuit. Sure. On April 10, 2020, more than three years before he filed the claim at issue in this case. But not more than five. Not more than five. But the five years only applies as a hard stop on the discovery rule. So essentially what 5109 says is we're going to take Maryland's discovery rule and while it applies in all other claims, all discovery claims, in the medical malpractice context, we're putting a hard stop of five years on it. In other words, even if you couldn't discover the negligence. Right. But that assumes that 5109 applies. So let me ask you. Can you point me to a time where either this court or any Maryland appellate court has applied 5109 to something that wasn't a med mal claim? So 5109 applies to any action. No, no, no. I'm not asking you what you think the statutory words mean. I know what the statutory words mean. I'm asking you about this court or any Maryland appellate court has ever applied 5109 to a claim that was not a med mal claim. Just a second. In the supplemental brief that we filed, I pointed to two or three different cases. It seems like I've read some Maryland cases where the physician sexually assaulted the patient or slapped the patient and that those were not med mal claims. No, so there's the Gokachia case, which I cite in the appellate's brief, which is an alleged salt and battery claim, not an alleged medical negligence claim, but an alleged salt and battery. And what the court said is that arise from the rendering or failure to render health care, making it subject to the Health Claims Act and thereby 5109. There's another claim by the name of Burrs v. Richards essentially saying the same thing. It's another intentional tort claim. But the court described that even if it's labeled as an intentional tort claim, if the claim arises out of the rendering Who are the defendants in those cases? I'm sorry, say again. Were those physicians? Yes. In the Gokachia case, I forget the name of the defendant doctor in the Burrs case. Those are physicians who are alleged to have committed intentional torts in the course of providing what was supposed to be medical care? In the course of rendering medical care, which is exactly what 5109 says. But the fraud here is not in the course of rendering medical care. The fraud is like, does this guy work for you? The fraud absolutely arises out of the course of rendering medical care. Mr. Bruningkamp arrived at Suburban Hospital seeking medical care. He alleges some person, I don't know who. He went to the emergency room, right? He presented himself. The emergency room had folks in it that were employees of the hospital. The emergency medicine doctor that treated him was not. The emergency room had folks there who were employees of the hospital. The nurses, sure. And they had folks on call, personnel on call, doctors on call, who were not employees of the hospital. I guess they'd be called independent contractors. Yes, sir. So they had two types of medical personnel that served patients in the emergency room. Some were employees. Some were independent contractors. Correct. And that, of course, is the very basis. And this fellow was an independent contractor, it turns out. Dr. Deet, correct. It turns out he was an independent contractor. And you all didn't tell him that. That's the allegation, correct. That is the allegation. But it doesn't change the fact— You're saying that's the allegation. I just want to be clear. There's a flavor of some of your arguments that are like, this claim fails as a matter of law because it's really just a disguised mad malclaim. You only moved to dismiss based on the statute of limitations, right? You did not move to dismiss based on Twombly and Iqbal, like failure to state a claim, classic, right? Correct. Purely on the statute of limitations. So we have to assume that for purposes of Maryland law, this theory of liability is a completely valid theory of liability and that he's adequately pled enough facts to support that theory of liability. And what you have to decide is whether or not the theory of liability arises in the course of rendering of health care. No, but there is a flavor to some of your arguments that strike me as just deep skepticism about the merits of this legal theory. But that's not before us. You agree? That is right on both accounts. Okay. That's exactly right. Exactly. Thank you. So I'm – well, have I answered your last question? I believe I have. You wanted me to point you to a few cases to discuss that issue specifically and I think I have. So, again, whether – this is the point that I feel like I'm not communicating well and I apologize if I'm not. I want to ask you, what's your position on certification to the high court of Maryland? I don't think it's necessary. I don't think it's necessary because either under 5101 or 5109, the statute of limitations bars his claims, either one, for the same reason. So your 5109 argument is that there's a hard stop and the five years ran? Using the discovery rule. Right, so under 5101, under the discovery rule, it could be more than five years before you discover your claim. Right. On 5109, they placed a hard stop on it of five years. Even if the claim was not discoverable, even if a plaintiff acting reasonably couldn't discover his claim, we'll still not – Right, but the five years is run. If it's 5109, then he's just out of luck. Honestly, to be entirely frank, if you're going to allege fraud, no, because 5109 subsection F says that 5109 is subject to Maryland 5203, which is the fraud exemption. All right, if 5101 applies, what do you say happens? The cause of action accrued no later than, as stated in the complaint, November 20th, 2015, when he became aware of his claim. He was under a legal duty to investigate all potential claims and then file it within a three-year period of time. So by no later than November 20th, 2018, the statute of limitations ran on all of his claims. Well, what if we conclude that that's incorrect and that the discovery occurred in 2022 when he got various discovery responses? Would the claim be within the statute of limitations at that point, under 5101? No, and the reason for that, if you look at the joint appendix at page 86 and 87, the answer to the complaint in this case was filed on April 20th, 2020. The lawsuit in this case was filed on May 4th, 2023, more than three years after the answer specifically told Mr. Brunekant again that Dr. D is not an agent or employee of the hospital. So the theory that Mr. Brunekant is advancing to you is that he learned for the first time that Dr. D was not an employee or agent of Suburban Hospital on May 11th through an email. Tell us again where the answer to the complaint, the first complaint... It's the complaint in this case. Well, the complaint in this case wasn't filed until 2023. The complaint in this case was filed on May 4th, 2023. Correct. All right. What I understand you to have said earlier was that in the original medical malpractice case, you filed an answer on behalf of the hospital that told the plaintiff that Dr. Dre was not their employee and they were not supervising him. Yes, sir. And that that was in 2020. That was on April 17th, 2020. All right, and so that would be outside the three years. Yes, sir. Where is that? Joint Appendix, page 86 and 87. I believe it's paragraph 4 and paragraph 6 of the answer to the complaint. And just so it's clear, what happens is the first lawsuit is filed on health claims, as you understand, and then eventually refiled here in this court. The complaint was filed here in this court on January 17th, 2020, and then my client's answer was filed on April 17th, 2020. And then more than three years later. But the allegation in his complaint in this case is that he found that out in the email, right? That's my problem. Well, but my problem is that we're now doing a whole lot of things on a motion to dismiss that don't involve the face of his complaint in this action, which we've generally said we don't do. Unless you convert it to a motion for some agenda, you are 100 percent correct. So you want us to sua sponte, convert this to a motion to summary judgment, and then affirm the district? I'm not asking you. I haven't asked you to do that in any of the briefs I filed. Sure, I understand. That's exactly what's going to happen. If you return this to the court, then I'll file a motion for summary judgment on the exact same issue for the exact same reason we just discussed. With that said, we shouldn't get there. Respectfully, we shouldn't get there. That is the appellee's argument. I've got three minutes to spare. I'm happy to answer any questions. The argument you just made, is that in your brief on appeal? I know you made that argument before the district court. Did you argue that on appeal? I did not argue on appeal that Mr. Brunican's claim is – That this whole theory that he learned from the answer and based on the answer – Correct. Okay. That's correct, sir. Okay, so I'm sure. The answer you gave me at paragraph four and paragraph six of the answer of the hospital from April of 2020 – Let me just get there, please. Yes, sir. You did not raise before the district court that those two paragraphs put him on notice in April of 2020 of the status of Dr. Day. I did not because it would go outside the confines of the complaint. Correct. Now, in retrospect, perhaps I should have filed a motion to dismiss and or in the alternative motion for summary judgment on that issue. I didn't because I did then and I still now think the issue is straightforward when it comes to the staff limitations issue. But that would be the next step if the case is returned. Thank you all very much for your time. Anything else? No. Thank you very much, sir. Mr. Brunican. Imagine a sign in front of the hospital, in front of the emergency room. Before you go in, it says, beware. Surgeons are not, you know, employed by the hospital. We may assign you a surgeon. We take no responsibility for what he does. We will not supervise what he does. And he may or he may not have malpractice insurance. If these facts are disclosed to you and you have an assumption of risk, that's okay. You know, I was warned and I proceeded anyway. That's not what happened here. None of these facts were disclosed in advance of assigning someone. I didn't know this surgeon. He was assigned to me by the hospital. So why wasn't the disclosure and the answer on April 17, 2020, why didn't that put you on notice? That was September of 2020. April 17, 2020. April 17, 2020. Actually, I think actually, you know, this is part of what exactly they failed to disclose. The fraudulent concealment has two aspects to it. The first aspect of the fraudulent concealment is their failure to disclose material facts that would have had a direct bearing on whether or not I used the surgeon. And they misrepresented what the surgeon was and the responsibility for it. And therefore, they had a duty to correct what they told me when they knew that it was incorrect. And they clearly knew that it was incorrect. These material facts were not disclosed. Let's say they were disclosed April 17, 2020. It was more than three years before you then filed the subsequent suit. Well, I filed to amend the complaint. Right. That's not the operative pleading that's before us. I know. But what happened is that I filed and the court didn't accept the amendment. So I turned around and immediately filed, you know, a new complaint. So I think I was diligent at all times in pursuing, you know, what I was told. The second aspect of the fraudulent concealment is that when the first case was filed, the defendants indicated to me that the defendant was not an employee and they had no contract. And that's the second aspect of the fraudulent concealment. They represented they didn't have a contract with this doctor. And I thought to myself, well, really, I mean, how can you not have a contract to assign someone to perform surgery without some sort of guidance? Where was this guidance? There had to be something. It just didn't make sense to me that you have a hobo from the street just picked off to perform, you know, on-call surgery. So I kept on pressing them in discovery for some sort of disclosure. And after I think maybe the second motion to compel, they produced the contract, okay? So they produced the contract on May 19th, 2022. And it was that disclosure of the terms of that contract that showed me exactly what they had not disclosed. It showed me that they had not disclosed to me that they weren't going to supervise as part of the contract. It showed me they weren't going to take responsibility as part of the contract. But the answer had talked about that in 2020, in April. They told me he wasn't an employee, okay? That didn't in any way tell me, you know, anything about what they had concealed from me. What it did tell me is that, well, you're not an employee. What's the basis? He told me they don't have a contract. That was a misrepresentation. That was the second aspect of the fraudulent concealment. The first being the duty, the failure to disclose. And then the continuation went by denying they had a contract. So for two years, they denied they had any contract at all. And as soon as that contract was disclosed, within two months, I had filed to amend the complaint, all right? And when they refused to amend the complaint on the basis of the argument of the defendant that it wasn't a malpractice claim, that it was a fraudulent concealment claim, a fraud claim, that was a whole different set of issues, all right? So the court dismissed it because of different legal theories. And so I turned around and I filed a new complaint, which would still have been within the statute of limitations in terms of looking at the date that I was on notice that material terms had not been disclosed to me pursuant to a duty to disclose on October 10 of 2015. So are there any questions that I could answer at all? Thank you very much, sir. Thank you very much. Good to have you with us. Thank you. We appreciate counsel's argument. And we'll take the case under advisement. And Madam Clerk, we'll adjourn court until tomorrow morning. This honorable court stands adjourned until tomorrow. God save the United States and this honorable court.
judges: Robert B. King, G. Steven Agee, Toby J. Heytens